UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

FRANCES NAUSE RIDDELL                                                                    PLAINTIFF

v.                                                               CIVIL ACTION NO. 3:14cv705-DPJ-FKB

HOWMEDICA OSTEONICS CORP.                                                          DEFENDANT

ORDER

This products-liability case is before the Court on Defendant Howmedica Osteonics Corp.'s ("Howmedica") Motion to Dismiss [21], pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Plaintiff Frances Nause Riddell's First Amended Complaint ("FAC") [20] has generally pleaded sufficient facts to state a claim for relief, the motion is granted in part but otherwise denied.

I.      Facts and Procedural History

On June 20, 2001, Plaintiff Frances Nause Riddell received a right total-hip arthroplasty at the University of Mississippi Medical Center. FAC [20] ¶ 6. The hip-implant components used in the surgery were designed and manufactured by Howmedica ("HOC"). *Id.* On November 15, 2011, Riddell underwent the same surgery on her left hip, again with hip-implant products made by HOC. *Id.* ¶ 7. Following the surgeries, Riddell has experienced hip pain, which she believes to be due to HOC's products. *Id.* ¶¶ 8  9. Riddell alleges that she has taken pain medication as a result of the product defect and will need to undergo multiple surgeries in the future to repair the damage. *Id.* ¶¶ 9  11. Riddell argues that HOC's noncompliance with federal regulations, at least in part, caused the products to be unsterile and become loose, causing her injuries. *See generally id.* ¶¶ 14  22.

On August 12, 2014, Riddell filed suit against Stryker Sales Corporation ("Stryker") in the Circuit Court of Hinds County, Mississippi, and following service, Stryker removed the case to this Court on September 9, 2014. Stryker immediately filed a motion to dismiss, and following briefing on that motion and a related motion to amend, the parties stipulated to dismissal of the original complaint and the filing of the FAC [20].

In the FAC, Riddell names HOC as Defendant and adds additional factual allegations. She pleads causes of action for negligence, gross negligence, and products liability, and seeks damages for the following: medical expenses; physical pain, impairment, and disfigurement; future surgeries; loss of services; loss of earning capacity; attorney's fees and costs; and punitive damages. HOC moved to dismiss [21] the FAC, Riddell responded [24], and HOC replied [26]. The Court has personal and subject-matter jurisdiction and is prepared to rule.

II.     Standard of Review

In considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)). To overcome a Rule 12(b)(6) motion, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citation and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (citing Fed. Rule Civ. Proc. 8(a)(2); *Twombly*, 550 U.S. at 556). "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (citing *Twombly*, 550 U.S. at 556).[1]

III.     Analysis

HOC offers a number of arguments for dismissing Plaintiff's various claims. The first is a preemption argument that would apply to each claim. Others are more claim specific—though overlap exists. Accordingly, the Court will first address preemption and then follow a claim-by-claim approach.

   A.     Preemption

HOC states that "[t]o the extent that Plaintiff intends to state a claim based on HOC's *compliance* with" FDA regulations, the "claims are preempted by federal statutory law." Def.'s Mem. [22] at 2 n.4 (emphasis added). In response, Riddell seems to read too much into HOC's position, believing that it applies to all claims. Pls.' Resp. [25] at 6. But as her analysis indicates, certain claims are preempted while others are not.

---

[1] Riddell argues that *Johnson v. City of Shelby, Mississippi*, altered these standards. 135 S. Ct. 346 (2014) (per curiam). But *Johnson* addresses the standard for pleading legal theories and expressly preserved *Twombly* and *Iqbal* as to factual allegations. *Id.* at 346–47.

The Medical Device Amendments of 1976 ("MDA") "only preempts state law claims which seek to impose standards greater than those established for the device by the FDA." *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 332  35 (2008).  Thus, to the extent, if any, Riddell complains that HOC "compli[ed] with FDA regulations," Def.'s Mem. [22] at 2 n.4, preemption would exist.  Riddell may, however, pursue parallel claims based on alleged failure to follow FDA regulations.  *See Bass v. Stryker Corp.*, 669 F.3d 501, 509 (5th Cir. 2012) (holding that a state is not prevented "'from providing a damages remedy for claims premised on a violation of FDA regulations; the state duties in such a case 'parallel,' rather than add to, federal requirements'" (quoting *Riegel*, 552 U.S. at 330)).

B.   Common-Law Negligence Claims

HOC argues that the Mississippi Products Liability Act ("MPLA"), supersedes Riddell's common-law negligence claims.  Miss. Code Ann. § 11-1-63.  Because Riddell has failed to respond, that portion of the motion is granted as unopposed.  *See Estate of Pernell v. City of Columbus*, No. 1:08CV0040-DD, 2010 WL 1737638, at *4 (N.D. Miss. Apr. 28, 2010) (holding that failure to argue a point in response amounts to a concession of the issue).

C.   MPLA Claims

Under the MPLA,

> [t]he manufacturer, designer, or seller of the product shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer, designer or seller:
>
> > (i)   1.   The product was defective because it deviated in a material way from the manufacturer's or designer's specifications . . ., or

      2.      The product was defective because it failed to contain adequate warnings or instructions, or

      3.      The product was designed in a defective manner, or

      4.      The product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product; and

(ii)    The defective condition rendered the product unreasonably dangerous to the user or consumer; and

(iii)   The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.

Miss. Code Ann. § 11-1-63(a).

HOC contends that the FAC fails to state a claim under the MPLA for a variety of reasons, including the failure to identify (1) which component part allegedly failed; (2) whether Riddell alleges "a design or manufacturing issue"; (3) if a manufacturing claim, what allegedly caused the issue; (4) "whether there is a labeling problem"; (5) "whether there is a warranty problem"; (6) whether there is some misrepresentation at the heart of this case; and (7) whether Riddell complains of the implant in her left or right hip, or both.  Def.'s Mem. [22] at 7.

To begin, the Court is reasonably satisfied that the FAC identifies the "Trident acetabular cup" as the component in issue.  FAC [20] ¶ 35.  As to the types of MPLA claims Riddell intended, Count Two of the FAC addressing "Product Liability" states:  "The Trident acetabular cup contained manufacturing, design or marketing defects, more particularly set forth below."  Id. ¶ 33.  Each will be addressed.

1.     Manufacturing Defect

There can be no serious question that the FAC references a manufacturing-defect claim. Indeed, the very first heading under Count Two reads: "*Manufacturing Defect*." FAC [20] at 11 (emphasis in original). The real question is whether such a claim has been sufficiently pleaded.

In order to state a claim for a manufacturing defect, a plaintiff must allege that the product "deviated in a material way from the manufacturer's . . . specifications." Miss. Code Ann. § 11-1-63(a)(i)(1); *see Shelter Ins. Co. v. Mercedes-Benz USA, LLC*, 236 F. App'x 45, 47 (5th Cir. 2007) (per curiam); *Harris v. Spine*, 39 F. Supp. 3d 846, 849 50 (S.D. Miss. 2014).

Whether Riddell adequately pleaded such a claim is a close call, but two Fifth Circuit cases provide considerable guidance. In *Bass*, 669 F.3d at 513, and *Funk v. Stryker Corp*., 631 F.3d 777, 782 (5th Cir. 2011), the Fifth Circuit reviewed the sufficiency of complaints against HOC alleging that its hip-replacement products were defectively manufactured. One complaint was deemed sufficient, one was not. *Compare Bass*, 669 F.3d at 513 (reversing dismissal and holding that plaintiff adequately pleaded claims) *with Funk*, 631 F.3d at 782 (affirming dismissal where complaint asserted conclusory facts).

Starting with *Funk*, the complaint made the following "factual" averments regarding the manufacturing-defect claim:

> [3.] The hip prostheses contained a manufacturing defect in that it was manufactured in such a manner that impurities, residues and bacteria remained on the prosthesis in violation of the FDA standards and requirements and in violation of the manufacturing processes and design approved by the FDA.
>
> [4.] The hip prostheses deviated, in its construction or quality, from the specifications or planned output. As more particularly set forth below, Plaintiff invokes the doctrine of res ipsa loquitur as to the manufacturing defect contained in the hip prosthesis.

631 F.3d at 782.  The Fifth Circuit had little trouble finding that the complaint was "impermissibly conclusory and vague" because it did "not specify the manufacturing defect; nor does it specify a causal connection between the failure of the specific manufacturing process and the specific defect in the process that caused the personal injury."  *Id.*  The Fifth Circuit also faulted the complaint for neglecting to "tell us how the manufacturing process failed, or how it deviated from the FDA approved manufacturing process."  *Id.*

> The complaint in the second case, *Bass*, went further, as the Fifth Circuit summarized:
>
> Bass pleaded: (1) he received a Shell implant; (2) the FDA had previously warned Stryker of bioburden in excess of FDA regulations in its final rinse of the Shells; (3) after Bass's surgery, Stryker ultimately voluntarily recalled those Shells, including the Shell specifically used in Bass's implant; (4) Bass suffered from a loose Shell due to a lack of bony ingrowth; and (5) the lack of bony ingrowth is a known effect of an excess of bioburden and manufacturing residuals on Shells.

669 F.3d at 510.  This time, the Fifth Circuit found that the plaintiff had "pleaded sufficient facts to find that his injury plausibly resulted from a violation of FDA standards in connection with his manufacturing defect claims, . . . and therefore, has pleaded a non-conclusory parallel claim."  *Id.*

In the present case, the FAC is stronger than the *Funk* complaint but weaker than the *Bass* complaint.  In its most relevant parts, the FAC states:

> On or about June 20, 2001, James Langston Hughes, Jr., M.D. and William McCraney, M.D. performed a right total hip arthroplasty on Plaintiff at University of Mississippi Medical Center.  During such surgery, a hip implant believed to be designed, manufactured and marketed by Stryker was implanted into Plaintiff's right hip.  Plaintiff believes such hip implant is identified as follows [describing component parts].  FAC [20] ¶ 6.
>
> On or about November 15, 2011, Robert Kersey Mehrle, M.D performed a left total hip arthroplasty on Plaintiff at University of Mississippi Medical Center.  During such surgery, a hip implant believed to be designed, manufactured and marketed by Stryker was implanted into Plaintiff's left hip.  Plaintiff believes such hip implant is identified as follows [describing component parts].  *Id.* ¶ 7.

Following both surgeries and upon the instructions of Plaintiff's physicians, Plaintiff performed her rehabilitative exercise and subsequently began to experience pain in her hips. *Id.* ¶ 8.

Plaintiff has had increased hip discomfort and severe pain. Upon information and belief, this increased hip discomfort is due to the failure of the Stryker devices. *Id.* ¶ 9.

Plaintiff anticipates undergoing a revision surgery in the near future. Upon information and belief, Plaintiff will be required to have additional surgeries as a result of Stryker's defective hip implants. *Id.* ¶ 10.

Stryker were [sic] in the business of designing, manufacturing, marketing and selling hip prostheses including the Trident System with metal hip acetabular cup and femoral stem implanted into Plaintiff on June 20, 2001 and November 15, 2011. *Id.* ¶ 12.

Stryker sold the subject hip prosthesis to Plaintiff and/or to her physician on her behalf to be used in her surgeries. *Id.* ¶ 13.

As evidence of Styker's violations of federal regulations relating to the Trident acetabular shells, on November 28, 2007, the FDA issued a Warning Letter to Stryker arising from inspections of Stryker's Mahwah, NJ facilities between June 1, 2007 through July 12, 2007. The FDA investigation revealed that Stryker's Trident acetabular shells were adulterated within the meaning of 21 U.S.C. § 351(h), in that the methods used in, or the facilities or controls used for, their manufacture, packing, storage, or installation were not in conformity with the Current Good Manufacturing Practice (CGMP) requirements of the Quality System (QS) regulation found at Title 21, Code of Federal Regulations (C.F.R.), Part 820. *Id.* ¶ 20.

A Form FDA 483, List of Inspectional Observations was issued to Stryker after these inspections, and the following continued violations, among others, were determined to have occurred [listing alleged infractions]. *Id.* ¶ 21.

These defective products were implanted into Plaintiff's body. Notwithstanding the inability to further define the acetabular cup's nonconformance due to microbiologic materials and/or residues left on the acetabular cup, orthopedic surgeons have expressed the opinion that these materials prevent boney ingrowth and cause loosening of the cup. The Trident's nonconformance with federal regulations, as found by the FDA, in all probability, caused the loosening of the cup and necessitated the needed revision. These violations of federal regulations,

including making an adulterated device, proximately caused Plaintiff's injuries and damages. *Id.* ¶ 22.

The Trident acetabular cup contained manufacturing, design or marketing defects, more particularly set forth below. *Id.* ¶ 33.

COUNT TWO:  PRODUCT LIABILITY

*Manufacturing Defect*

The Trident acetabular cup contained a manufacturing defect in that it was adulterated as a result of being manufactured in violation of FDA regulations and requirements, as set forth below, such that manufacturing residuals remained on the prosthesis after its manufacture:

a.  failing to ensure the quality policy is understood, implemented and maintained at all levels of the organization, 21 C.F.R. §820.20(a);

b.  failing to provide adequate resources, including trained personnel, for management, performance of work and assessment activities, including internal quality audits necessary to comply with the federal regulations as required by 21 C.F.R. §820.20(b)(2); and

c.  failing to establish and maintain procedures to prevent contamination of equipment or product by substances that could reasonably be anticipated to have an adverse effect on product quality as required by 21 C.F.R. §820.70(e). *Id.* ¶ 35.

The Trident acetabular cup deviated, in its construction or quality, in a material way from the specifications or planned output in that the manufacturing residuals that remained on the cup coated the back and impaired boney ingrowth. This proximately caused the need for Plaintiff to have a revision surgery. *Id.* ¶ 35.

Had Riddell stopped with her averment that her condition was caused because "manufacturing residuals that remained on the cup coated the back and impaired boney ingrowth," *id.*, then the FAC would be remarkably similar to the one the Fifth Circuit rejected in *Funk*. But Riddell offers more, averring that the alleged contamination occurred because HOC violated 21 C.F.R. §§ 820.20(a), 820.20(b)(2), and 820.70(e). FAC ¶ 34. The regulations

Riddell cites are the same provisions pleaded in the *Bass* complaint. *See Bass*, 669 F.3d at 510 ("The complaint further alleges that the Shell was adulterated due to violations of 21 C.F.R. §§ 820.20(a), 820.20(b)(2), and 820.70(e)"). And *Bass* rejected the argument that reference to these regulations lacks sufficient specificity. *Id.* at 511. Thus, Riddell comes closer than the *Funk* complaint to specifying "what went wrong in the manufacturing process." *Id.* (citing *Funk*, 631 F.3d at 782)).

But *Bass* is by no means a clean fit. There, the FDA warning was more directly linked to the product Bass received, as was the product recall. *See id.* at 510. In contrast, HOC sharply disputes whether the FDA materials Riddell cites in the FAC have any relevance to the products she received. As the FAC itself indicates, the referenced FDA inspections related to years 2005 through 2007, whereas Riddell's procedures occurred in 2001 and 2011.

HOC's argument gives the Court some pause and clearly weakens the analogy to *Bass*. But at the Rule 12(b)(6) stage, the Court is not interested in weighing the evidence. Instead, *Iqbal* and *Twombly* require "facial plausibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). And that inquiry allows the Court to make reasonable inferences "draw[ing] on its judicial experience and common sense." *Id.* at 679 (citing Fed. R. Civ. Proc. 8(a)(2); *Twombly*, 550 U.S. at 556). "'Asking for such plausible grounds to infer the element of a claim *does not impose a probability requirement* at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal that the elements of the claim existed.'" *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (alteration in original) (quoting *Twombly*, 127 S.Ct. at 1965).

10

Moreover, these inquiries are context specific, *Iqbal*, 556 U.S. at 679, and in this identical context, *Bass* noted that

> "courts must keep in mind that much of the product-specific information about manufacturing needed to investigate [a medical device claim] fully is kept confidential by federal law."  Therefore, asking the plaintiff to make more specific allegations than those found in Bass's complaint may make pleading a parallel claim regarding defective manufacturing nearly impossible."

669 F.3d at 511 (quoting *Bausch v. Stryker Corp.*, 630 F.3d 546, 558 (7th Cir. 2010) (reversing dismissal of claim under Rule 12(b)(6) in hip-replacement case and holding that "[f]ormal discovery is necessary before a plaintiff can fairly be expected to provide a detailed statement of the specific bases for her claim") (other citations omitted).

In the present case, Riddell has pleaded that (1) she received a Trident acetabular cup; (2) HOC manufactured the product; (3) the FDA had detected problems with contamination that lead to the same conditions Riddell allegedly suffered after receiving her implants; and (4) HOC violated specific FDA regulations causing the contamination.  These facts are sufficient to carry the presumption of truth.  And in that light, it is reasonable to infer a plausible claim that the issues detected in 2005 through 2007 regarding these same products were present in the products Riddell received   especially when she claims the same injury.  In any event, Riddell has presented "'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d at 587 (quoting *Twombly*, 550 U.S. at 556).

Having reached that conclusion, the Court agrees that Riddell did not clearly explain in her Complaint whether she premises her claims on the product implanted in 2001, the one implanted in 2011, or both.  *Compare* FAC [20] ¶ 5 (stating that the case relates to "*a* defective

11

hip prosthesis . . . implanted in the Plaintiff's *hip*" (emphasis added)) *with id.* ¶¶ 6, 7 (discussing two procedures). Viewed in a light most favorable to the nonmovant, it appears that both are in dispute, but Riddell will need to clarify the issue either through amendment or some other means acceptable to both parties.

    2.  Design Defect

As mentioned, the FAC does state in Count Two that the "Trident acetabular cup contained manufacturing, *design* or marketing defects, more particularly set forth below." FAC [20] ¶ 33 (emphasis added). The problem, however, is the FAC then provides subject headings for the manufacturing and marketing claims but ignores the design-defect claim. Elsewhere in her FAC, the word "design" is generally tacked on to the list of other issues without further explanation. *See, e.g., id.*[2]

In her response, Riddell baldly states that she "pled sufficient facts to survive a 12(b)(6) challenge in that her design defect claims are premised on violations of FDA regulations." Pl.'s Resp. [25] at 5. But the statement was offered in the context of the preemption argument, and she never explains why the design was defective.

The Court's own review of the FAC indicates that the closest Riddell comes to factual support for this theory is the following quote from a Form FDA 483, List of Inspectional Observations: "Failure to have a proper design validation in support of changes to show that shell fixation issues are not the result of a dimensional or tolerance mismatch." *Id.* ¶ 21. But citing a lack of "design validation" is not the same as identifying an actual design defect.

---

[2]The same thing occurs in Count One (Negligence): "Stryker was negligent in the design, manufacture, equipping, sale and marketing of the medical devices used by the Plaintiff." *Id.* ¶ 28.

Ignoring the conclusory statements regarding a design defect leaves insufficient facts to suggest a reasonably plausible design-defect claim.  This portion of the motion is therefore granted.

### 3. Marketing Defect

HOC next argues that no claim for a marketing defect exists under Mississippi law.  True, but within the section detailing Riddell's marketing-defect cause of action she asserts that the failure

> to warn Plaintiff or his [sic] physicians . . . that the hip prosthesis contained residuals that would prevent boney ingrowth and could cause infection and/or loosening that would necessitate subsequent surgeries . . . [and that] the prosthesis was contaminated due to faulty manufacturing processes . . . [resulted in] inadequate warnings or instructions.

*Id.* ¶ 36.  Comparing these statements to the statute, it is clear Riddell claims the product was "defective because it failed to contain adequate warnings or instructions."  Miss. Code Ann. § 11-1-63(a)(i)(2).  Rule 8 does "not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson*, 135 S. Ct. at 346 .  HOC does not address this portion of Riddell's Complaint or Response, and the Motion is accordingly denied as to her failure-to-warn claim.

### 4. Breach of Warranty

#### a. Express-Warranty Claim

HOC's initial memorandum generally states that it is impossible to tell from the FAC whether Riddell suggests "a labeling problem" or some other "misrepresentation at the heart of this case."  Def.'s Mem. [22] at 7.  Looking at the FAC, it does reference an express-warranty claim, stating that HOC breached an "express warranty in that [the product] failed to do what Stryker stated it would do on its packaging and labeling, among other things."  FAC ¶ 39(b).  But

13

that is essentially the only reference.  Such pleadings are too conclusory.  *See Bass*, 669 F.3d at 515 16 (affirming dismissal of express-warranty claim because such claims cannot impose requirements greater than those the FDA provides, and complaint offered only conclusory facts).  The express-warranty claim is dismissed.

b.     Implied-Warranty Claims

As for the implied-warranty claims, HOC argues in its initial brief that "[b]y recent amendment, the MPLA now governs 'any action for damages caused by a product, including, but not limited to, any action based on a theory of strict liability in tort, negligence or breach of implied warranty.' Miss. Code Ann. § 11-1-63.  Consequently, all of Plaintiff's claims must rise or fall on the MPLA's terms." *See* Def.'s Mem. [22] at 6, n.5.  Riddell never responds to HOC's argument, so it appears that the implied-warranty claims must be raised under section 11-1-63.[3]

D.     *Res Ipsa Loquitur*

HOC argues that *res ipsa loquitur* is not a separate grounds for liability and that this count should be dismissed from Complaint.  Riddell fails to respond to this argument, and in any event HOC is correct.  *See Read v. S. Pine Electric Power Ass'n*, 515 So. 2d 916, 918 n.1 (Miss. 1987) (en banc) ("Res ipsa loquitur . . . is not, like negligence and strict liability, a theory of recovery.  It is simply one form of circumstantial evidence.").  The motion is granted to the extent that Riddell attempts to state a separate claim for relief based on this theory.

---

[3]As a practical matter, this concession should have little substantive impact on the case.  In her response, Riddell states that the implied-warranty claims   like the manufacturing claims   are premised on the alleged failure to follow FDA regulations.  *See* Pl.'s Resp. [25] at 5 6.  Any assertions beyond that would be preempted.  *See Bass*, 669 F.3d at 517 (holding that if "the plaintiff claims that the defendant breached the implied warranty despite its compliance with FDA requirements, that claim is clearly preempted . . .").

E.      Punitive Damages

HOC finally argues that the punitive-damages demand should be dismissed because Riddell has not pointed to actions by HOC sufficiently severe to justify an award. Riddell fails to respond to the argument and therefore has abandoned the claim. *See Estate of Pernell*, 2010 WL 1737638, at *4. And in any event, it appears that HOC is correct; while Riddell indeed labels HOC's actions as constituting "reckless and wanton disregard," FAC [20] ¶ 32, she states no facts supporting an inference that HOC consciously caused her injuries. The motion is granted as to the punitive-damages demand.[4]

F.      Leave to Amend

In her response, Riddell asks for leave to amend to the extent she has failed to adequately plead any of her claims. The Court will not grant leave to amend for four reasons. First, under Local Rule 7(b)(3)(C), "[a] response to a motion may not include a counter-motion in the same document." As such, there is no motion pending. Second, even if viewed as a motion, Riddell did not offer a proposed amended complaint showing how she would remedy her deficiencies. Third, some of the claims were dismissed because Riddell failed to respond to HOC's dispositive arguments. And fourth, Riddell has already amended her complaint in light of an earlier Rule 12(b)(6) motion raising these same issues, including a motion to dismiss punitive damages. *See*

---

[4]Even with Riddell's failure to respond, the Court might have taken a harder look at this point had the devices been sold at a time when the FDA investigation provided a tighter fit. While the Court is willing to find that the FDA investigation provides sufficient facts to show a reasonably plausible claim, the timing of those investigations was not sufficiently close to the production of the two disputed products to alone support a punitive award. Or at least Riddell has not explained why they should. Moreover, Riddell has not offered any other evidence suggesting a plausible claim for punitive damages. So, with that and her failure to respond, the Court grants this part of the motion.

Def.'s Mem. [3] at 8. Riddell sought leave to amend, and stated that she "believe[d] the First Amended Complaint [would] cure any alleged defects in the initial complaint, as outlined in Defendant's Motion to Dismiss." Pl.'s Mot. [17] at 2. Absent any indication what Riddell would allege differently this time, the Court concludes that she has pleaded her best case. *Brewster v. Dretke*, 587 F.3d 764, 767 68 (5th Cir. 2009) ("Granting leave to amend is not required, however, if the plaintiff has already pleaded his 'best case.'") (citation omitted).

IV.     Conclusion

The Court has considered the parties' arguments. Those not specifically addressed would not have changed the outcome. For the foregoing reasons, HOC's Motion to Dismiss [21] is granted in part and denied in part. The parties should contact Magistrate Judge F. Keith Ball's chambers in order to reestablish deadlines for this case.

**SO ORDERED AND ADJUDGED** this the 3rd day of September, 2015.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE
